```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF TENNESSEE
                        WESTERN DIVISION
```

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| **v.** ) | No. 09-20068 |
| ) | |
| **JAMES BAKER,** ) | |
| ) | |
|     **Defendant.** ) | |

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AS MODIFIED**

Before the Court is Defendant James Baker's Motion to Suppress filed November 17, 2009 (Def.'s Mot., ECF No. 35) and Baker's Objections to the Report and Recommendation of Magistrate Judge Charmiane G. Claxton (Def.'s Objections, ECF No. 79). Magistrate Judge Claxton recommended that the Court deny Baker's Motion to Suppress. (Report and Recommendation on Def.'s Mot. to Suppress, ECF No. 77.) ("Report") Baker's objections are OVERRULED, except his objection to the Magistrate Judge's finding about the location of the drugs, which is well-taken. The Report of the Magistrate Judge is modified accordingly and ADOPTED as modified. The Motion to Suppress is DENIED.

    **I.  Procedural and Factual Background**

On February 24, 2009, the grand jury returned an indictment charging Baker with one count of possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1); one count of possession with the intent to distribute at least five grams of a cocaine-based controlled substance, in violation of 21 U.S.C. § 841(a)(1); and one count of using and carrying a firearm while possessing with the intent to distribute at least five grams of a cocaine-based controlled substance, in violation of 18 U.S.C. § 924(c).

Baker filed a Motion to Suppress the firearm and drugs found on his person when he was arrested on June 14, 2008. (See Def.'s Mot. 1.) The United States responded on October 4, 2010. (Gov't's Resp., ECF No. 81). Baker replied on November 27, 2009. (See Def.'s Reply, ECF No. 40.)

The Motion was referred to Magistrate Judge Claxton on November 17, 2009. (See Order of Reference, ECF No. 36.) Magistrate Judge Claxton held a hearing on March 5, 2010, at which Baker and Officer Mark Reese ("Officer Reese" or "Reese") of the Memphis Police Department testified. (See Report 1, 4.) After the hearing, both parties submitted closing briefs. (See Def.'s Position on Mot. to Suppress, ECF No. 61; Government's Proposed Findings of Fact and Mem. of Law, ECF No. 62.) Magistrate Judge Claxton filed her Report on September 13, 2010, recommending that the Court deny Baker's Motion to Suppress.

2

(See Report.)  Baker timely objected to the Report on September 27, 2010 (See Def.'s Objections.)

The pending charges stem from a series of events on June 14, 2008, as Officer Reese patrolled the Northside Manor Apartments ("Northside Manor").[1]  (Report 1.)  Although Officer Reese was not investigating anyone in particular, his lieutenant had recently informed him of complaints by Northside Manor employees, who said drug-related activity had made it like "the wild, wild west."  (Id. 1-2.)  Officer Reese also knew of significant gang and drug activity in the area because of his daily patrols and his having grown up nearby and attended high school with friends who lived in the area.  (Id. 2.)

Dressed in plain clothes, Officer Reese and his partner were patrolling Northside Manor in an unmarked car when Reese observed Baker.  (See Report 2.)  As he watched from the car, Officer Reese saw Baker stand next to a vehicle, converse with others, enter and exit an apartment repeatedly, and then engage in a hand-to-hand transaction with a vehicle's occupants. (Id.)  During the transaction, Officer Reese saw Baker receive money from the vehicle's occupants in exchange for a plastic bag. (Id.)

---

[1] The foregoing facts come from the Magistrate Judge's Report, ECF No. 77. Except where noted, Baker has not objected to the proposed factual findings. (See Def.'s Objections 2-4.)

Following this transaction, Officer Reese and his partner watched as Baker walked toward an apartment while the vehicle that Baker had approached drove off. (Id.) Officer Reese alerted the marked police unit located "around the corner" to stop the exiting vehicle. (Id.) Officer Reese believed that the occupants of the vehicle had purchased drugs from Baker and that there would be drugs inside the vehicle. (Id.) Based on his experience investigating drug transactions, Officer Reese thought Baker would only have money on his person, so he elected not to approach Baker when he directed the marked unit to confront the vehicle. (Id. 2-3.)

As he was about to leave Northside Manor, Officer Reese testified, he saw Baker approach a second vehicle. (See id. 3.) According to Officer Reese, he was approximately eight feet from Baker at this time, and he observed a firearm in Baker's back pocket.[2] (Id.) Officer Reese initially thought Baker was "pulling" the gun, but Baker removed a plastic bag of what Reese believed to be crack cocaine from Baker's back pocket.[3] (Id. 3.) Officer Reese identified the drugs as crack cocaine based on his familiarity with the appearance and packaging of crack cocaine

---

[2] Baker also objects to the Magistrate Judge's crediting Officer Reese's testimony that, when he observed Baker with the firearm and suspected crack cocaine, Reese was about eight feet away from Baker over Baker's testimony that Reese was "at the beginning of the driveway." (See Def.'s Objections 4, ECF No. 79.) Baker also objects to the Magistrate Judge's finding about the lack of record support as to the length of the driveway. (See id. 3.)

[3] Baker objects to the Magistrate Judge's findings that Officer Reese thought Baker was about to pull a gun and that Baker removed the suspected drugs from his back pocket. See infra Section III.A.1-2.

4

from his previous arrests of suspects involved with the drug. (Id.) According to Officer Reese, Baker was not trying to hide the drugs and was using no security.[4]  (Id. 3-4.)

When he realized Baker was armed, Officer Reese contacted the marked police unit that he had previously advised to detain the vehicle engaged in the earlier transaction with Baker. (Id. 4) Despite his suspicion that the vehicle contained evidence of a drug transaction, Officer Reese directed the unit to abandon the stop and assist him, telling the unit that Baker had a gun. (Id.)  The marked unit let the vehicle go and did not collect any evidence.  (Id.)  Officer Reese acted because Baker's approaching the second vehicle with a gun and crack cocaine had created a "safety issue." (Id.)

Officer Reese then exited his vehicle and approached Baker from behind to prevent Baker from fleeing, destroying evidence, or shooting him.  (Id. 6.)  Officer Reese's partner approached the vehicle transacting with Reese and made contact with its driver.  (Id.)  As Officer Reese approached, Baker had one hand on top of the vehicle holding a bag of crack cocaine and was speaking with the vehicle's occupants.  (Id.)  Approaching him from behind, Officer Reese grabbed Baker's right hand and used his left hand to hold the gun in Baker's back pocket. (Id.)

---

[4] Baker objects to the Magistrate Judge's crediting Officer Reese's testimony over Baker's testimony on disputed issues of Reese's location when he saw the firearm and suspected crack cocaine and whether Reese saw the objects before approaching Baker. (See Def.'s Objections 3-4.)

Baker did not resist. He simply said "police, police" and "I have a gun in my back pocket."[5] (Id.) Because Officer Reese had his hand on the gun, he replied "I already know." (Id.) Officer Reese placed Baker in handcuffs, secured the gun and drugs, and took Baker into custody. (Id.)

## II. Standard of Review

"A district judge must determine de novo any part of a magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C). After reviewing the evidence, a court is free to accept, reject, or modify the proposed findings or recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). The district court need not review — under a de novo or any other standard — those aspects of the report and recommendation to which no objection is made. Thomas v. Arn, 474 U.S. 140, 150 (1985). The district court should adopt the findings and rulings of the magistrate judge to which no specific objection is filed. Id. at 151.

## III. Analysis

### A. Findings of Fact

Baker objects to five findings of fact by the Magistrate Judge: (1) that Officer Reese thought Baker was "pulling" a firearm, (2) that, at the time Officer Reese thought Baker was

---

[5] Baker objects to the Magistrate Judge's finding that the first thing he said when Officer Reese engaged him was "police, police." (See Def.'s Objections 3-4.)

6

"pulling" a firearm, Baker instead removed drugs from his back pocket, (3) that there was no testimony supporting Baker's position as to the length of the Northside Manor driveway, (4) that Baker's initial statement when Officer Reese approached him was "police, police," and (5) that Officer Reese's testimony was more credible than Baker's testimony on the issues of where Reese was when he saw the suspected firearm and crack cocaine and whether Reese saw the objects on Baker's person before approaching him. (See Def.'s Objections 2-4.)

### 1. "Pulling" a Firearm

Baker objects to the Magistrate Judge's finding that Officer Reese believed Baker was "pulling" a firearm. (Def.'s Objections. 2; see Report 3.) Baker argues that nothing in the record implies or suggests that Baker was about to pull a firearm. (Id.) However, Officer Reese testified as follows: "Well, when I got to the side of him, that's when I said, 'Hey, this dude's got a gun; and he's pulling.'" (Hr'g Tr. 37, Mar. 5, 2010.) This testimony supports the Magistrate Judge's finding, and the Court finds that, based on his observations, Officer Reese initially thought that Baker was "pulling" a firearm when Baker approached the second vehicle.

### 2. Location of Drugs

Baker objects to the Magistrate Judge's finding that Officer Reese saw Baker remove drugs from his back pocket.

7

(Def.'s Objections 3; see Report 3.)  The United States concedes that the record shows that Officer Reese actually testified that he saw Baker remove "what appeared to be crack rock from his right front pocket."  (Gov't's Resp. 5; see Hr'g Tr. 55.) Baker's objection is well-taken, and the Court finds that Officer Reese saw Baker remove the suspected drugs from his right front pocket rather than his back pocket.  The Magistrate Judge's Report and Recommendation is modified accordingly.

### 3. Length of Driveway

Baker objects to the Magistrate Judge's finding no support for Baker's assertion that the driveway into Northside Manor was over one hundred yards long.  (Def.'s Objections 3.)  Baker argues that, because a quarter mile is about four hundred yards, part of Officer Reese's testimony that the driveway was "really long" and "maybe a quarter mile" supports his position. (Report 4; Def's Objections 3.)  However, Officer Reese also testified that he was "not exactly good with distances."  (See Hr'g Tr. 19.)  Like the Magistrate Judge, the Court finds the record inadequate to support finding that the driveway was over one hundred yards long.  Regardless, the specific length of the driveway is inconsequential.

### 4. Baker's Initial Statement

Baker objects to the Magistrate Judge's finding that Baker's first statement when Officer Reese approached him was

8

"police, police." (Def.'s Objections 3; see Report 6.) Baker argues that Officer Reese initially testified that Baker first said "police, police," but that, on cross examination, Reese testified that Baker first said "I have a gun in my back pocket." (Def.'s Objections 3-4 (citing Hr'g Tr. 14, 45, 47).) Officer Reese's direct testimony was as follows: "He didn't resist in any way. The first thing that he said before he even – you know, first thing he said was 'police, police.' First thing out of his mouth was, 'I have a gun in my pocket.'" (Id. 14.) Reviewing Office Reese's statements de novo, the Court finds that Reese's direct testimony, taken in context, was that "I have a gun in my pocket" was Baker's first statement to Reese. The Court finds that, when Officer Reese approached Baker, Baker said "I have a gun in my pocket."

### 5. Credibility

Baker objects to the Magistrate Judge's crediting Officer Reese's testimony over Baker's testimony on disputed issues. (Def.'s Objections 4; see Report 7). During the suppression hearing, Baker disputed Officer Reese's testimony about where Reese was when he allegedly saw the firearm and crack cocaine and whether Reese saw the items on Baker's person before approaching him. (Report 4.) Baker argues that the Magistrate Judge failed to consider that Officer Reese drove an unmarked vehicle, Baker was walking across the parking lot when Officer

9

Reese allegedly saw the firearm, Officer Reese never stopped his vehicle, Officer Reese and his partner were unknown to Baker before they approached him, and, on approaching him, Officer Reese did not limit his search to Baker's outer clothing. (Def.'s Objections 4.)

None of the facts that Baker draws to the Court's attention is material on the issues of Baker's or Officer Reese's credibility. Because Officer Reese's actions comport with his testimony, his testimony is more convincing. Despite Officer Reese's belief that the first vehicle contained evidence of an earlier drug transaction, Reese directed the marked police unit to abandon its stop of that vehicle and return to assist him with a "safety issue." (Hr'g Tr. 32-33.) Officer Reese's testimony that his observation of a handgun on Baker's person led to Reese's safety concern is the only explanation in the record for this otherwise unusual request. (Id.; see Report 4.) Baker has offered no alternative explanation. Considering the issue de novo, the Court finds that the preponderance of evidence supports crediting Officer Reese's testimony over Baker's. Therefore, the Court finds that, from a distance of approximately eight feet, Officer Reese observed Baker with suspected crack cocaine in his hand and a firearm on his person before approaching him.

### B. Conclusions of Law

Baker objects to two conclusions of law by the Magistrate Judge: (1) that Officer Reese's search of Baker was within the scope permitted by Terry v. Ohio, 392 U.S. 1 (1968) and (2) that Baker's statement to Officer Reese need not be suppressed as "fruit of the poisonous tree" under Wong Sun v. United States, 371 U.S. 471, 488 (1963).

### 1. Reasonable Scope

The Magistrate Judge concluded that Officer Reese had reasonable suspicion to conduct an investigatory stop based on his observation of a hand-to-hand transaction in which Baker received money, Baker's possession of a plastic bag believed to contain crack cocaine, and Baker's possession of a firearm. (Report 10.) See Terry v. Ohio, 392 U.S. 1 (1968). Baker does not object to this conclusion. Rather, Baker contends that Officer Reese's search exceeded the scope of an investigatory stop because "Terry does not permit an officer to invade the privacy of the contents of the pockets of an individual." (Def.'s Objections 5.) Because Officer Reese's placing his hand on a firearm in Baker's back pocket was a permissible search incident to a lawful arrest, Baker's objection is without merit.

The Fourth Amendment guarantees the "right of the people to be secure in their persons, house, papers, and effects against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. Warrantless searches and seizures are per se unreasonable

11

unless they are covered by a specific exception.  See Minnesota v. Dickerson, 508 U.S. 366, 372 (1993) (citing Thompson v. Louisiana, 469 U.S. 17, 19-20 (1984)).  One such exception is the search-incident-to-arrest exception, which permits police to conduct a limited post-arrest search of an arrestee's person and the area within his immediate control.  Chimel v. California, 395 U.S. 752, 763 (1969).

"The Sixth Circuit, like many other circuits, has struggled to find a workable definition of the term 'arrest.'" United States v. Williams, 170 F. App'x 399, 403 n.4 (6th Cir. 2006). Whether a suspect has been arrested is a fact-dependent inquiry based on the totality of the circumstances.  United States v. Smith, 549 F.3d 355, 360 (6th Cir. 2008). Courts consider a variety of factors, including transportation of the suspect to another location, significant restraints on the suspect's freedom of movement involving physical confinement or coercion, use of weapons or bodily force, and issuance of Miranda warnings.  Smith, 549 F.3d at 360; Williams, 170 F. App'x at 402 (citations omitted).  The Sixth Circuit has also defined an arrest in terms of the traditional test for a Fourth Amendment seizure, which asks whether "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Williams, 170 F. App'x

12

at 403 n.4 (citing United States v. Saari, 272 F.3d 804, 808 (6th Cir. 2001)).

When he approached Baker, Officer Reese placed significant restraints on the Baker's freedom of movement by grabbing Baker's right hand and using his left hand to hold Baker's gun. See Smith, 549 F.3d at 360; (Report 6). Although the Magistrate Judge did not made a finding as to whether Officer Reese had his weapon drawn, Reese used bodily force by placing his hands on Baker's person. See Williams, 170 F. App'x at 402; (Report 6). Once Officer Reese made physical contact with Baker, Baker could not reasonably have believed that he was free to leave. See Williams, 170 F. App'x at 403 n.4. Shortly after engaging Baker, Officer Reese placed Baker in handcuffs and removed him from the scene. See Smith, 549 F.3d at 360; Williams, 170 F. App'x at 402; (Report 6). Because Officer Reese placed significant constraints on Baker's freedom of movement through the use of bodily force, based on the totality of the circumstances, Officer Reese arrested Baker when he made physical contact with Baker.

"A warrantless arrest is constitutionally valid if, 'at the moment the arrest was made, the officers had probable cause to make it – whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent

13

man in believing that the [individual] had committed or was committing an offense.'" United States v. Campbell, 486 F.3d 949, 955 (6th Cir. 2007) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)) (internal quotation marks omitted). Probable cause "does not require any showing that the officer's suspicions prove to be correct or that they are more likely true than false." Id. "To determine whether an officer had probable cause to arrest an individual," courts "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause.'" United States v. Romero, 452 F.3d 610, 615 (6th Cir. 2006) (quoting Maryland v. Pringle, 540 U.S. 366, 371 (2003)).

Observing an object in plain view provides probable cause to arrest the person holding that object, if the criminal nature of the object is immediately apparent. See United States v. Turner, No. 94-5080, 1995 U.S. App. LEXIS 2952, at *6 (6th Cir. Feb. 14, 1995) (citing Texas v. Brown, 460 U.S. 730, 742-73 (1983)). Where a police officer observes an individual with suspected narcotics in plain view, the officer has probable cause to arrest the individual. See, e.g., United States v. Thomas, 138 F. App'x 759, 761-62 (6th Cir. 2005) (holding that police officer had probable cause to arrest a suspect when he observed the suspect in possession of a rock-like substance that

14

appeared to be crack cocaine); United States v. Marxen, 410 F.3d 326, 331 (6th Cir. 2005) (holding that police officers had probable cause to arrest a suspect after observing suspected marijuana and drug paraphernalia in his vehicle during a lawful stop); cf. Turner, 1995 U.S. App. LEXIS 2952, at *6-7 (holding that an officer had probable cause to arrest a suspect when the officer observed the suspect stuffing suspected cocaine into his shorts).  An officer may rely on his training and experience to determine whether an object in plain view is likely narcotics. See Thomas, 138 F. App'x at 761-62 (citing Turner, 1995 U.S. App. LEXIS 2952, at *6-7).  An officer may rely in part on knowledge of drug activity in the area to form his conclusion. See Turner, 1995 U.S. App. LEXIS 2952, at *6-7 (explaining that it was "more likely than not" that a substance that looked like cocaine "was an illegal substance, given the fact that this activity occurred in an area known for drug trafficking").

While lawfully present in the public driveway of Northside Manor, Officer Reese observed Baker with a plastic bag containing an unknown substance.  (See Report 3-4.)  Based on his training and experience, Officer Reese concluded that the substance was crack cocaine.  See Thomas, 138 F. App'x at 761-62; (Report 3).  Officer Reese made this observation and came to this conclusion while patrolling an area known for drug activity.   See Turner, 1995 U.S. App. LEXIS 2952, at *6-7;

15

(Report 1-2). Officer Reese knew that Northside Manor employees had recently complained to Reese's supervisor about drug activity in the area, and he was familiar with the area's drug and gang activity from daily patrols and having grown up with friends who lived in the area. (Report. 1-2). Based on these facts, a reasonable police officer would have concluded that Baker had committed or was committed an offense. Campbell, 486 F.3d at 955; Romero, 452 F.3d at 615. Officer Reese had probable cause to arrest Baker before approaching him, making his warrantless arrest of Baker lawful. See Thomas, 138 F. App'x at 761-62; Marxen, 410 F.3d at 331.

Once a lawful arrest has been made, a police officer may search an arrestee's person and the area within his immediate control. Chimel, 395 U.S. at 763. A police officer need not effect a formal custodial arrest prior to conducting a search incident to arrest. United States v. Dotson, 246 F. App'x 897, 903 (6th Cir. 2007) (citing United States v. Montgomery, 377 F.3d 582, 586 (6th Cir. 2004)); Williams, 170 F. App'x at 404. The exception for a search incident to arrest "permits an officer to conduct a full search of an arrestee's person before he is placed under lawful custodial arrest as long as the formal arrest follows quickly on the heels of the challenged search . . . and the fruits of that search are not necessary to sustain

probable cause to arrest him." Montgomery, 377 F.3d at 586 (citing Rawlings v. Kentucky, 448 U.S. 98, 100 (1980)).

When he made physical contact with Baker's person, Officer Reese placed one hand in Baker's back pocket to hold the firearm he had previously observed. (See Report 6). Under the search-incident-to-arrest exception, Officer Reese had authority to search Baker's person, including the pocket where Baker's gun was located. See Chimel, 395 U.S. at 763.

That Officer Reese did not formally arrest Baker before the search is inconsequential. See Williams, 170 F. App'x at 404. Because Officer Reese observed that Baker was committing an offense before approaching him, a "legitimate basis for the arrest existed before the search" of Baker's pocket. See Williams, 170 F. App'x at 404. Officer Reese's formal custodial arrest of Baker occurred "quickly on the heels of" Reese's search of Baker's pocket, if not contemporaneously with the search as part of a single transaction. See id; (Report 6). Therefore, Officer Reese's placing his hand on a gun in Baker's back pocket constitutes a search incident to a lawful arrest and comports with the Fourth Amendment.

### 2. Baker's Statement

Because Officer Reese did not violate Baker's rights under the Fourth Amendment, the "fruit of the poisonous tree" doctrine, Wong Sun v. United States, 371 U.S. 471 (1963), does

17

not apply. The Court need not suppress Baker's statements or the firearm found on Baker's person.[6]

**IV. Conclusion**

For the foregoing reasons, the Court ADOPTS the Report and Recommendation of the Magistrate Judge as modified and DENIES the Motion to Suppress. All findings and conclusions of the Magistrate Judge not discussed above have not been specifically objected to and are adopted.

So ordered this 2nd day of November, 2010.

s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

---

[6] The record shows that Baker made a statement about the gun in his back pocket when Officer Reese arrested him, but before Baker received the warnings required by Miranda v. Arizona, 384 U.S. 436 (1966). (See Report 6.) Even if Baker had challenged the statement as violative of his Fifth Amendment rights, which he has not, it would remain admissible because Baker volunteered the statement. See Miranda, 384 U.S. at 478 (explaining that "volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected").